UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE REAVES,

    Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Defendant.

Case No. 14-cv-11258
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]**

---

Jacqueline Reaves has sued Allstate Property and Casualty Insurance Company for refusing to pay for losses arising from a fire at her home. Allstate seeks summary judgment against Reaves on the grounds that she made fraudulent statements during its investigation of her claim. The Court finds that a reasonable jury could believe Reaves did not intend to mislead Allstate, and therefore denies summary judgment.

**I. FACTUAL RECORD**

The evidence is presented in the light most favorable to Reaves, as the party opposing summary judgment. Reaves objects to most of the exhibits attached to Allstate's motion, primarily because they were not "authenticated by a proper affidavit explaining the document's authenticity or applicability." (Resp. at 11.)[1] Allstate attached affidavits to its reply brief to provide foundation for the objected-to exhibits. Nonetheless, the Court finds the objected-to exhibits are unnecessary to resolve the motion. Therefore, the following facts are based only on

---

[1] Reaves styles her objections as a motion to strike the exhibits, but a motion may not be made within a response brief. *See* E.D. Mich. ECF Pol. & Proc. R. 5(d).

the two exhibits to which Reaves does not object: the transcript of Reaves's examination under oath, and the deposition transcript for Lesley Buerkle. (*See* Resp. at 11.)

The parties do not dispute that on August 1, 2013, a fire occurred at Reaves' home. (Mot. at 1; Resp. at 1.) They also do not dispute that at the time, her home and personal property were insured under a homeowners' insurance policy issued by Allstate. (*Id.*; *see* Mot. Ex. B, Policy.) And Reaves admits, on information and belief, that Allstate used an outside investigator, Robert Trenkle, for part of its investigation into the cause and origin of the fire at Reaves's home. (Mot. at 1; Resp. at 1.)

On September 27, 2013, Reaves was examined under oath by a lawyer for Allstate. (*See* Resp. Ex. A; Resp. at 3, EUO Tr.) She testified that the morning of the fire, she left at about 10 a.m. to drive her teenaged son to summer school, and then returned home. (EUO Tr. at 78–79.) She said she was the only person in the house. (*Id.* at 77–79.) Reaves' husband and other children were at her mother-in-law's house; they often stayed there for days at a time in the summer because of the swimming pool there. (*Id.* at 73–75.) Reaves said she watched television and made herself fried chicken and french fries to eat. (*Id.* at 79, 89.) She used two pans. (*Id.* at 89.) She did not think that she left the burners on, although they were found in the on position after the fire. (*Id.* at 90.) She said if she did leave the burners on after she was done cooking, she did not do it on purpose. (*Id.* at 108.) Reaves said she left the house again at about 11 a.m. (*Id.* at 79.) She said was in a rush to leave and she ate her food as she walked out the door because she needed to finish what she had to do before it was time to pick her son up from school. (*Id.* at 91.) She testified as follows:

> Q. All right. Where did you go?
> A. I picked up my cousin and went to the unemployment office.
> Q. All right. So, the first thing you did is you drove to your cousin's house?

2

> A. Yes.
>
> Q. And what is the cousin's name?
>
> A. Well, no. I stopped at my doctor's office.
>
> Q. Okay. Now, wait. Wait. You left the house. Where's the first place you went after you left your house?
>
> A. Down Kelly Road, because my doctor's office is that way, to see if I can get in to see him really quickly. Couldn't get in to see him.
>
> Q. Did you have an appointment?
>
> A. No.
>
> Q. And then where did you go from the doctor's office?
>
> A. To my cousin's house.
>
> . . .
>
> Q. Okay. What was the purpose of going to her house?
>
> A. She had called me and asked me if I had gone to the unemployment office or gotten my stuff fixed with that. And I said, "No." And she said, "Because I need to go." Or, she text[sic] me that. And, so, I picked her up and took her to—with me, and we both went to the unemployment office.
>
> Q. When did she text you?
>
> A. I don't know.
>
> Q. I mean, two days earlier?
>
> A. No, that morning. That morning. That's what jarred my memory, like: I got to get up and go.
>
> Q. And did, then, the two of you go to the unemployment office?
>
> A. Yes.

(*Id.* at 80–82.) After going to the unemployment office, Reaves said, she dropped her cousin off, picked up her son and his friend at the mall, dropped the friend off, then went to her mother-in-law's house. (*Id.* at 91–92.) After hanging out there for a few hours, Reaves testified, she and her family started driving to Cedar Point. (*Id.* 96–97.) On the way, she received a call about the fire. (*Id.* at 97–98, 101–02.) After dropping the younger kids off at her mother-in-law's house, Reaves said, she and her husband and teenaged son went to their house and found the fire department there putting out the fire. (*Id.* at 103–04.)

Reaves acknowledged that this testimony was different from what she had previously told Allstate's investigator, Trenkle, during an interview that he recorded on the day of the fire. (*Id.* at 82–85.) She testified as follows:

> Q. Okay. Now, let's just go back here a little bit. You remember being interviewed by an investigator with Allstate?
>
> A. Yes.
>
> Q. And do you remember that originally, at least, you told that investigator that you had a doctor's appointment that morning that you had kind of forgotten about?
>
> A. I told him I had a doctor's appointment that morning.
>
> Q. And did you also tell him that you had kind of forgotten about it, and while you were in the middle of cooking chicken on the range, you remembered?
>
> A. Yes.
>
> Q. And that you kind of left the house in a rush to go to this doctor's appointment?
>
> A. Yes.
>
> Q. And you—and, in fact, you called him back, that investigator that recorded that interview with you, on August 15th, maybe ten days later or so, and told him that that wasn't true?
>
> A. I told him I needed to amend something that I told him.

(*Id.* at 82–83.) Reaves said she called Trenkle because she "wanted to tell him exactly where [she] was without [her] husband being present." (*Id.* at 84.) She acknowledged that this was after her doctor's office told her that Allstate had contacted them. (*Id.* at 85.) She explained, "when they did that, I said, 'You know, I knew I shouldn't have told him that.' I should have just told—asked my husband to leave the vehicle, and then I would have felt more comfortable talking to the investigator. But I didn't do that. So, that's why I called him, to amend what I told him. And I told him that when I called him." (*Id.*)

Reaves testified that when she called Trenkle, she told him about going to the unemployment office. (*Id.* at 84.) When asked why she had not told him about it previously, she explained: "I didn't want my husband to know about my unemployment income, and he was in

4

the car with us when [Trenkle] did the recording. I didn't know it mattered." (*Id.*) Reaves said she also told Trenkle about her mortgage when she called. (*Id.* at 86.) She testified that she does in fact have a mortgage on her home. (*Id.* at 48–49, 51.) But she testified that on the day of the fire, she told Trenkle that there was no mortgage because she did not want her husband to know about it. (*Id.* at 86.) Reaves testified that the only reason she did not tell Trenkle about the mortgage and where she went the day of the fire was that she did not want her husband to know. (*Id.* at 87.)

Lesley Buerkle, the practice manager at Reaves's doctor's office, was deposed for this case. (Mot. Ex. F, Buerkle Dep. at 6–7.) Buerkle testified that Reaves was not seen by her doctor on August 1, 2013, and she could not remember seeing Reaves at the doctor's office that day. (*Id.* at 11–12, 16, 18.)

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

**III. ANALYSIS**

This case was filed in state court and removed here on diversity grounds. (*See* Dkt. 1.) "[F]ederal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965)). When deciding issues of substantive law, this Court must apply the law of the state's highest court. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014). If the state's highest court has not decided the applicable law, the state law must be ascertained "'from all relevant data,' which includes the state's appellate court decisions." *Id.* (quoting *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir. 1995)).

The policy at issue provided that Allstate does "not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss, claims or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."[2] This language is required by Michigan law; each fire insurance policy issued or delivered in the state must provide "[t]hat the policy may be void on the basis of misrepresentation, fraud, or concealment." Mich. Comp. Laws § 500.2833(1)(c). Michigan courts apply the following framework when an insurer asserts this defense:

> [t]o void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it.

---

[2] Reaves apparently objects to the admissibility of the insurance policy Allstate attached to its motion (*see* Resp. at 11), but she does not dispute that her policy contained this language (*see id.* at 13).

*Mina v. Gen. Star Indem. Co.*, 555 N.W.2d 1, 5 (1996)) (citing *Rayis v. Shelby Mut. Ins. Co. of Shelby, Ohio*, 264 N.W.2d 5 (1978)), *rev'd in part on other grounds*, 568 N.W.2d 80 (Mich. 1997). The parties generally agree that this framework applies here.[3]

There is some case law that suggests that the showing of willfulness or intent in the fourth element is no longer required for an insurer to assert this defense. *See Martin v. Farm Bureau Gen. Ins. Co.*, No. 275261, 2008 Mich. App. LEXIS 819, 2008 WL 1807940 at *6 (Mich. App. Apr. 22, 2008); *Williams v. Am. W. Home Ins. Co.*, 2012 U.S. Dist. LEXIS 17966, 11–12 ( E.D. Mich. Feb. 14, 2012). These cases explain that the intent requirement was based on the language of Mich. Comp. Laws § 500.2832, which was repealed effective January 1, 1992, and which required that each policy include a provision that it was void "if the insured *willfully* concealed or misrepresented a material fact." The current statute does not use the word willfully. *See* Mich. Comp. Laws § 500.2833(1)(c). But it does state: "Except as otherwise provided in this act, each fire insurance policy issued or delivered in this state pursuant to subsection (1) shall contain, at a minimum, the coverage provided in the standard fire policy under former section 2832." Mich. Comp. Laws § 500.2833(2). It thus appears that intent is required even though the policy provision in this case did not use the word "willfully." And Allstate has not argued otherwise. So the Court will require Allstate to demonstrate that every reasonable jury would find that Reaves intended that Allstate rely on her false statement.

---

[3] Reaves argues that under the policy, Allstate must also show that it was prejudiced by the misrepresentation, but she does not cite a specific provision of the policy. (*See* Resp. at 17–18.) And she apparently objects to the admissibility of the only copy of the policy that has been proffered. (*See* Resp. at 11.) The Court finds no basis to require a showing of prejudice. Under Michigan law, "fraudulent proof of loss, also called 'false swearing', does not have justifiable reliance as one of its elements." *Rayis v. Shelby Mut. Ins. Co. of Shelby, Ohio*, 264 N.W.2d 5, 7 (Mich. Ct. App. 1978).

Reaves testified during her examination under oath that she made statements to Allstate's investigator that she knew to be false: that she went to a doctor's appointment the day of the fire, and that there was no mortgage on the house. This satisfies elements (2) and (3) of the *Mina* framework, leaving only whether the misrepresentations were material and whether Reaves intended that Allstate would act upon them.

"A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Mina*, 555 N.W.2d at 5. Allstate argues that "there is no doubt that the Plaintiff's whereabouts before and at the time of the fire are material, particularly due to Mr. Trenkle's findings that the fire could not have occurred from the stove being left on at noon, and that someone was in the house later that day." (Mot. at 9.) Allstate points out that under Michigan law, "the incendiary origin of a fire may be established by the acts and conduct of a person having opportunity and motive," and "Allstate was attempting to determine if [Reaves] had opportunity to set or arrange for the setting of the fire." (Reply at 5.) With respect to the mortgage, Allstate argues that "[k]nowing all persons/entities with an interest in the insured property is clearly material to Allstate's investigation, as those persons/entities may be entitled to any insurance proceeds that are owed." (Mot. at 10.) And, Allstate argues, the mortgage was relevant "to determine whether she had a financial motive for setting the fire." (Reply at 5.)

The Court agrees with Allstate that Reaves's whereabouts the day of the fire are material, and no reasonable jury could find otherwise. Allstate was trying to determine whether Reaves had the motive and opportunity to set the fire herself. The fact that she went to the unemployment office is relevant to both motive and opportunity. *Cf. George v. Travelers Indem. Co.*, 265 N.W.2d 59, 62 (Mich. Ct. App. 1978) ("There was enough direct and circumstantial evidence of motive, opportunity and incendiary cause for the jury to find that the arson defense

was established."). And Reaves's representation that she was at a doctor's appointment caused Allstate to expend time and resources attempting to confirm her statement. *See Michigan Basic Prop. Ins. Ass'n v. J.T. Hari Designs*, No. 204949, 1999 WL 33409938, at *2 (Mich. Ct. App. Nov. 19, 1999) (holding that the trial court did not err in concluding that false statements that tax returns were destroyed in the fire were relevant, in part because "defendants' assertions that the tax returns existed but had been destroyed in the fire resulted in plaintiff's expenditure of time and resources in attempting to procure copies of these documents.").

The Court also agrees with Allstate that the existence of a mortgage on the home is indisputably material to Reaves' motive as well as the value of Reaves' loss. *See 7 Mile & Keystone, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 11-12930, 2013 WL 1629209, at *4–5 (E.D. Mich. Apr. 16, 2013) (finding the insured's false representation that the property was leased at the time of the fire "was relevant in determining if [the insured] had a motive to burn the building," as well as to the value of the loss); *Smith v. Farm Bureau Ins. Co.*, No. 281034, 2009 WL 563727, at *1 (Mich. Ct. App. Mar. 5, 2009) ("[T]he value of the property claimed by plaintiff would be relevant to the investigation, and it would, therefore, be material.").

But the Court does not agree that Allstate is entitled to summary judgment on Reaves' intent to defraud Allstate. Allstate has not provided any evidence of such intent, and Reaves has testified that she only intended to conceal information from her husband. A reasonable jury could find that Reaves did not intend for Allstate to rely on her statements. *See Auto-Owners Ins. Co. v. Tax Connection Worldwide, LLC*, No. 306860, 2012 WL 6049631, at *7 (Mich. Ct. App. Dec. 4, 2012) ("While a jury might be free to infer that [the insured] had an intent to defraud [the insurer] by way of his statements, [the insured] specifically denied any such intent in his

affidavit, and [the insurer] did not establish the absence of a genuine issue of material fact as to his intent so as to warrant summary disposition in its favor." (citation omitted)).

Indeed, Reaves corrected her false statements shortly after her interview with Allstate's investigator and while the investigation was ongoing. In *Zayour v. Liberty Mut. Fire Ins. Co.*, No. 12-11926, 2014 WL 3611766, at *8 (E.D. Mich. July 22, 2014), the court held that the fact that the insured corrected the false statement during the insurer's investigation created an issue of fact as to whether he intended to defraud the insurer. *See also Smith*, 2009 WL 563727, at *2 ("Because plaintiff admitted to the discrepancies both at her examination under oath and at trial, a reasonable juror could infer that she entered the sworn statement without the intent to defraud.").

Because a reasonable jury could find that Reaves did not intend for Allstate to act upon her statements about her whereabouts on the day of the fire and existence of a mortgage, Allstate is not entitled to summary judgment.[4]

## IV. CONCLUSION AND ORDER

For the reasons discussed, Allstate's Motion for Summary Judgment (Dkt. 16) is **DENIED**.

          s/Laurie J. Michelson
          LAURIE J. MICHELSON
          UNITED STATES DISTRICT JUDGE

Dated: May 26, 2015

---

[4] The Court does not address Reaves' argument that she did not make a misrepresentation in the application process because Allstate has not moved for summary judgment on that basis. (*See* Resp. at 18–20; Reply at 6.)

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 26, 2015.

                                  s/Jane Johnson
                                  Case Manager to
                                  Honorable Laurie J. Michelson